Edward J. FOLEY, Sr., Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 98 PENSION FUND, et. al., Defendants.

Civil Action No. 98–906.

United States District Court,
E.D. Pennsylvania.

March 29, 2000.

Edward J. Foley, Jr., Philadelphia, PA, for plaintiff.

Richard C. McNeill, Philadelphia, PA, for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff was denied a portion of his accrued pension benefits and now brings claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), the Labor Management Reporting and Disclosure Act of 1974, 29 U.S.C. § 401, et. seq. ("LMRDA"), and the Internal Revenue Code,. 26 U.S.C. §§ 411 and 412. Now before this Court are the cross-motions of plaintiff Edward J. Foley, Sr. (Document No. 46), and defendants International Brotherhood of Electrical Workers Local Union 98 Pension Fund, et. al., (Document Nos. 44 and 45).

## I. BACKGROUND

Edward Foley, Sr., was a union member who contributed to the International Brotherhood of Electrical Workers Local Union No. 98 Pension Fund from 1959–1971. He earned 12.5 years of pension credits during that time. In 1971, he was fired from employment covered under the plan (employment in the electrical industry), and from 1971 to 1981, Foley did not work in covered employment.[1] He claims that he continued to seek employment in the electrical industry during the 1971–81

by contacting union offices and members for job references. While Foley was not involved in covered employment and thus earned no pension credits from 1971–81, apparently he remained active in union affairs, voted in union elections, and taught courses for union members during that time. Foley returned to covered employment in 1981 and eventually became president of the union and a trustee of the pension fund. He retired and sought pension benefits in 1996.

The controversy in this case surrounds plaintiff's 1971–81 hiatus and its effect on the benefits plaintiff had accrued prior to it. The International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan ( "plan") contains a "break in service" provision under which accrued pension credits lapse when an individual fails to work 600 hours in covered employment for a consecutive two-year period. (Plaintiff's Motion for Partial Summary Judgment, Ex. A, International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, at 3) ("break-in-service provision"). It is undisputed that Foley failed to work for 600 hours in covered employment for more than two consecutive years during the 1971–81 period. However, Foley believed he qualified for an exception to the break-in-service provision, under which an individual who suffered a break in service may nevertheless collect pension credits accrued prior to the break in service if s/he can show that s/he was "continuously available for work within the jurisdiction of the Union and was unable to obtain covered employment." (Plaintiff's Motion for Partial Summary Judgment, Exh. A, International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, at 3) ("available-for-work exception").

In 1988, Foley raised his eligibility for the available-for-work exception to the trustees of the pension fund ("trustees"). The trustees passed a resolution to "change the pension records of Edward J.

---

1. From 1971–81, Foley was employed by his     father-in-law's tire business, sold cars, etc.

Foley ... to reflect that Mr. Foley did not incur a break-in-service because he met the requirements of the Pension Plan [exception] ... which provides a grace period and obviates the Plan's break-in-service provision." (Plaintiff's Motion for Partial Summary Judgment, Exh. B. Local 98 Pension Trust Fund, Minutes of the Meeting, Dec. 7, 1988, at 13). The matter lay dormant until 1995, when union member Fred Compton,[2] who plaintiff claims bore a grudge against plaintiff,[3] began raising questions about whether plaintiff was entitled to pension benefits for the years before his break in service. Compton submitted a letter to the pension fund trustees alleging that plaintiff may have misled them in 1988 about his availability for work during his break in service. The trustees reopened the matter and conducted an investigation into the 1988 vote, ultimately concluding that, while plaintiff had not committed misconduct and had produced sufficient evidence to qualify for the available-for-work exception for the most of the years during his break in service (1975–81), he had not proved that he was available for, but unable to, obtain covered work during the years 1972–74. Thus, the pension plan reversed its 1988 determination and concluded that plaintiff did not qualify for the available-for-work exception and was not entitled to credits accrued from 1959–71. (Plaintiff's Motion for Partial Summary Judgment, Exh. G, Letter from Trust Fund Counsel Laurance E. Baccini, Feb. 23, 1995).

The matter again entered a period of dormancy until plaintiff retired and actually applied for pension benefits in July 26, 1996. While his application was granted for benefits accrued from 1981 to 1996, his application for credits accrued during the years 1959–71 was denied in 1996, as were his appeals. Plaintiff then brought this action.

Plaintiff asserts claims under ERISA for recovery of benefits 29 U.S.C. § 1132(a)(1)(B), and equitable relief under 29 U.S.C. § 1132(a)(3), against the International Brotherhood of Electrical Workers Local Union 98 Pension Fund ("Pension Fund") and Scott Ernsberger, and John J. Dougherty, Edward Neilson, Joseph Agresti, Thomas J. Reilley, Jr., Dennis Link, William C. Rhodes, Roy Dantz, and Larry Bradley in their capacities as trustees (collectively, the "Plan Defendants"). He also names as defendants the International Brotherhood of Electrical Workers Local Union 98 ("Union") Dougherty and Neilson in their capacities as union officers (collectively, the "Union Defendants"). Plaintiff also asserts claims under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412 ("LMRDA"). The Plan Defendants assert counterclaims against plaintiff for breach of fiduciary duty under ERISA.

## II. ANALYSIS

The Union Defendants (Document No. 44) and the Plan Defendants (Document No. 45) have each filed motions for summary judgment as to all of plaintiff's claims. Plaintiff has filed a motion for partial summary judgment on his ERISA claims (Document No. 46). The Union Defendants' motion will be granted in full; the Plan Defendants' motion will be granted in part and denied in part; and plaintiff's motion will be granted in part and denied in part.

### A. Summary Judgment Standard

According to Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

**2.** Compton was added as a defendant in this case by plaintiff's Amended Complaint (Document No. 2), and dismissed pursuant to a stipulation (Document No. 47).

**3.** Plaintiff had defeated the Compton in a prior election for president of the local union.

judgment as a matter of law," then a motion for summary judgment must be granted. The question before the Court at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court's role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the non-moving party's favor. *See id.* at 249, 106 S.Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

In deciding whether there is a disputed issue of material fact, the "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). On cross-motions for summary judgment, the court must determine separately on each party's motion whether judgment may be entered in accordance with the summary judgment standard. *See Sobczak v. JC Penny Life Ins. Co.,*

1997 WL 83749, No. 96–3924 (E.D.Pa. Feb. 14, 1997)1997 U.S.Dist.LEXIS 1801 *aff'd,* 129 F.3d 1256 (3d Cir.1997) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 23–25 (2d ed.1983)).

## B. ERISA

Plaintiff asserts claims for recovery of benefits under § 1132(a)(1)(B) and for injunctive relief under § 1132(a)(3). In their motion for summary judgment, defendants assert that plaintiff's claims are procedurally barred and that they fail on the merits.

### 1. *Procedural Objections*
#### a. Timeliness

Defendants first assert that plaintiff did not appeal the trustees' denial of his benefits in a timely fashion and thus failed to exhaust his administrative remedies. Under the plan, defendants argue, Foley had 60 days to appeal the decision of the trustees to deny him credits accrued from 1959–71, and his appeal was received four days after the expiration of the 60–day period. Having failed to exhaust administrative remedies as required under ERISA, defendants contend, plaintiff cannot proceed to the merits of his claim.

The facts regarding the timeliness issue are somewhat convoluted. Plaintiff submitted his application for pension benefits, including credits accrued from 1959–71, on July 26, 1996. (Plaintiff's Motion for Partial Summary Judgment, Exh. L, Pension Application of Edward J. Foley). On September 4, 1996, the pension fund notified him that he would receive only the pension credits accrued from 1981–96, and would not receive credits accrued prior to his break in service. (Plaintiff's Motion for Partial Summary Judgment, Exh. M, Letter from Benefits Administrator, Sept. 4, 1996). On November 6, 1996, plaintiff filed what he believed was an appeal of the decision to deny him credits accrued from 1959–71 due to the break-in-service provision. (Plaintiff's Motion for Partial Sum-

mary Judgment, Exh. N, Letter from Edward J. Foley, Nov. 6, 1996). In a letter dated December 12, 1996, plaintiff was notified that his claim for pension benefits for the years 1959–71 was denied, and told he could appeal the denial. (Plaintiff's Motion for Partial Summary Judgment, Exh. Q, Letter from Scott A. Ernsberger, Plan Administrator, Dec. 12, 1996).

On February 5, 1997, plaintiff wrote a letter to the plan administrator, which plaintiff considered a second appeal. (Plaintiff's Motion for Partial Summary Judgment, Exh. P, Letter from Edward J. Foley, Feb. 5, 1997). On April 16, the pension fund administrators sent plaintiff a detailed letter setting forth the status of plaintiff's claim and again afforded plaintiff 60 days to file an appeal. (Plaintiff's Motion for Partial Summary Judgment, Exh. R, Apr. 16, 1997). Plaintiff received that letter on April 21. Plaintiff then submitted an appeal, including a memorandum and affidavits, which was received by the plan administrators on June 24, 1997, 4 days after the 60–day period set forth in the April 16 letter. (Plaintiff's Motion for Partial Summary Judgment, Exh. S, Petition Appeal of Edward J. Foley, June 23, 1997).

Plaintiff argues that he appealed the denial of benefits twice in a timely fashion (on November 6, 1996, and February 5, 1997) and that the information submitted on June 24, 1997, has no bearing on the timeliness issue. In order to establish whether plaintiff appealed the denial of benefits in a timely fashion, I must first decide when the denial of benefits took place. Plaintiff received three significant letters following his application for benefits in July 1996: the September 4 letter, the December 12 letter, and the April 16 letter. Plaintiff argues that the September 4 and December 12 letters constituted denials, and that he appealed from those letters in a timely fashion. Defendants argue that the April 16 letter was the denial, and that plaintiff's appeal from that letter was untimely.

■ I am persuaded by plaintiff's argument that the December 12 letter is a denial under the Plan. The Plan does not define "denial," but sets forth these requirements: a denial must be in writing, must set forth the reasons for the denial, and must inform the claimant of his or her right to appeal. (Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. E, at 64). The December 12 letter did all of this, including informing plaintiff of his right to appeal the decision. (Plaintiff's Motion for Partial Summary Judgment, Exh. Q, Letter from Scott A. Ernsberger, Plan Administrator, Dec. 12, 1996).[4] Plaintiff submitted a letter on February 5, 1997, within 60 days of the December 12 letter, in which plaintiff stated, "[P]lease consider this letter as my formal written appeal from your December 12, 1996, decision." (Plaintiff's Motion for Partial Summary Judgment, Exh. P, Letter from Edward J. Foley, Feb. 5, 1997). Thus, I conclude that plaintiff's appeal was timely,[5] and that defendants are not enti-

4. Furthermore, the minutes of trustees meeting on November 22, 1996, in which the trustees decided to deny Foley's eligibility for accrued credits, indicates that the trustees believed they might have already denied Foley's claims for his 1959–71 credits in 1995, and that they were, at the November 22 meeting, deciding an appeal. (Plaintiff's Motion for Partial Summary Judgment, Exh. O, Minutes of the Special Meeting of the Board of trustees, Nov. 22, 1996). The trustees ultimately directed that a letter be sent denying him benefits so that he could appeal. (Id.) It is noted in the minutes of the November 22 meeting, "Subsequent to the meeting. a denial of benefits was sent to Mr. Foley advising him of his right to appeal in accordance with the plan." (Id.) Clearly, this refers to the December 12, 1996 letter.

5. Because I conclude that the December 12 letter was a denial under the Plan and the Feb. 5 letter an appeal, defendants' April 16 letter purporting providing plaintiff with 60 days to appeal is at best an extension of time for plaintiff to review the record and supply additional information. Under these circumstances, plaintiff's late submission of that additional information did not constitute an untimely appeal, but an untimely submission of

tled to summary judgment on the issue of timeliness.[6]

### b. Proper Defendants

■ Defendants argue that the trustees, the union, and union officials are not proper defendants because the plan is the only proper defendant in a suit for benefits under ERISA. Defendants are incorrect in asserting that only the plan may be sued for benefits under ERISA. The Court of Appeals for the Third Circuit has held that the plan is *not* the only proper party in a suit for benefits under ERISA. *See Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir.1994).[7] *Curcio* holds that fiduciaries of the plan can be held liable for recovery of benefits under an ERISA plan, *id.* at 233–35, and there is ample evidence that the individual trustees in this case are fiduciaries, as they exercise control and discretion over the administration of the plan as required under *Curcio*. (Plaintiff's Motion for Partial Summary Judgment, Exh. A, International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, at 45).[8] Furthermore, there is specific plan language that states that "[t]he trustees may ... allocate fiduciary responsibilities and various ad-

ministrative duties to committees and sub-committees ..." (Plaintiff's Motion for Partial Summary Judgment, Exh. A, International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, at 46). The trustees must possess fiduciary responsibilities if they are given the power to delegate them, and thus, under *Curcio*, the trustees are fiduciaries that may be held liable for a denial of benefits under ERISA.

■ The Union Defendants, however, are correct in asserting that they are not proper parties in a suit for recovery of benefits under ERISA. There is no evidence that the union or the individual defendants, in their capacity as union officials, exercised discretion or control over the administration of the plan such that they could be considered fiduciaries of the plan. Because the Union Defendants are not proper parties under ERISA, summary judgment will be granted in favor of the Union Defendants as to all of plaintiff's ERISA claims. *See Payonk v. HMW Industries, Inc.*, 883 F.2d 221 (3d Cir.1989) (where parties wear "two hats," ERISA attaches only to the extent that they func-

additional information in support of his appeal that has no significance for ERISA's exhaustion requirement.

6. Even if Foley's appeal were untimely, defendants would not prevail, because they have not shown that they were prejudiced by the untimely submission, as they are required to do under the Supreme Court's recent decision in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). *See Garcia v. Fortis Benefits Ins. Co.*, No. 99–826, 2000 WL 92340 at *4–11(E.D.Pa. Jan. 24, 2000)2000 U.S.Dist.LEXIS 569, at *27–37 (in Pennsylvania, ERISA-covered plan required to show it was prejudiced by untimely claim application) (citing *Ward*); *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977).

I note my disagreement with the portion of the decision in *Garcia* that holds that *Ward* applies only to denials of benefits that took place after *Ward* was decided. It seems to me that the application of *Ward* to a pre-*Ward* plan decision would only be problematic if *Ward* somehow altered the actual administra-

tion of the plan. *Ward* did no such thing; it merely clarifies a plan's trial burden on the timeliness issue and thus affects only the trial and not the responsibilities of a plan administrator. Therefore, a plan defendant cannot argue that it relied upon the pre-*Ward* regime concerning timeliness, and the application of *Ward* to pre-*Ward* plan decisions is not inequitable.

I believe that even if Foley's appeal were untimely, plaintiff would prevail under *Ward* because defendants have not demonstrated that the untimely appeal prejudiced them in any way.

7. A more detailed discussion of fiduciary liability in a suit for recovery of benefits under ERISA is contained in this Court's recent decision in *Vaughn v. Metropolitan Life Ins. Co.*, 87 F.Supp.2d 421 (E.D.Pa.2000) 2000 U.S.Dist.LEXIS 2750.

8. This plan language in quoted at length *infra*, text, p. 804.

tion in their capacity as plan administrators).

## 2. *Merits of Benefits Claim Under 29 U.S.C. § 1132(a)(1)(B)*

While the trustees may be proper defendants under § 1132(a)(1)(B), plaintiff's claim may face perils on the merits, depending on the standard applied by the Court in reviewing the Plan's decision to deny benefits. The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where an administrator has been given discretion, its decisions are reviewed under an "abuse of discretion" or "arbitrary and capricious" standard,[9] and they "will not be disturbed if reasonable." *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir.1997) (quoting *Firestone,* 489 U.S. at 111, 109 S.Ct. at 954).

Defendants contend that this Court should apply the arbitrary and capricious standard to the decision to deny benefits to Foley, because the plan gives the trustees discretionary authority over the administration of the plan. The plan states,

> The trustees shall make such rules and establish such regulations for the administration of the plan as they shall deem necessary and reasonable. Except as otherwise herein expressly provided, the trustees shall have the *exclusive right and discretion to interpret the Plan, to construe terms and to decide all questions arising in the administration and operation of the plan,* including but not limited to all questions of eligibility and status under the plan. Any such interpretations or decisions so made shall . . .

be conclusive and binding on all persons; provided, however, that all such interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated.

(Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 11, Amendment No. 17 to the Restated Local Union No. 98 IBEW Pension Plan, at 8) [emphasis added]. I conclude, on the basis of the plan language, that the plan endowed the trustees with sufficient authority to interpret and construe the terms of the plan and make determinations with regard to eligibility. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57.

■ Foley appears to concede that the trustees had sufficient discretionary authority over plan administration, but he argues that this Court should nevertheless review the trustees' decision *de novo* for two reasons. First, plaintiff argues, a *de novo* standard should be applied because the trustees voted in 1988 in favor of plaintiff's eligibility for credits accrued from 1959–71 despite his break in service, and then overturned that decision in 1995. It is unclear why plaintiff believes that the trustees' two votes on eligibility would alter the standard of review to be applied by this Court. If plaintiff is arguing that the Supreme Court did not clarify the proper standard to be applied by courts in reviewing denial of benefits under ERISA until 1989 (in *Firestone*), and that because the trustees initially voted in favor of plaintiff's eligibility in 1988, this Court must apply the pre 1989 standard, his argument is unpersuasive. Putting aside the issue of whether a standard of review may be applied retroactively, this Court is reviewing the 1996 denial of benefits, not the trustees' preliminary judgments on plaintiff's eligibility in 1988 or 1995. It is an open question whether those prior judgments had any real effect at all on plaintiff's

9. "The 'arbitrary and capricious' standard is essentially the same as an 'abuse of discretion' standard. . . ." *Mitchell v. Eastman Kodak Co.,* 910 F.Supp. 1044, 1047 (M.D.Pa. 1995), *aff'd,* 113 F.3d 433 (3d Cir.1997).

eligibility or were merely advisory, as plaintiff had not actually applied for benefits at the time those judgments were rendered. Because this Court is focused on the actual denial of plaintiff's application for his pre-break-in-service pension benefits in 1996, his Court is bound to apply the analysis set forth in *Firestone.*

Foley also argues that a *de novo* standard is required because the trustees have articulated new reasons to justify their denial of benefits that were not offered at the time the benefits were denied. *See Matuszak v. Torrington Co.,* 927 F.2d 320, 322–23 (7th Cir.1991).[10] Plaintiff argues that defendants have raised allegations of plaintiff's misconduct as a new reason for denying him benefits, and that this reason was not set forth in any of the prior denial-related correspondence with the trustees. This argument fails for two reasons. First, the trustees have not advanced plaintiff's alleged misconduct as the his benefits were denied; they have merely cited the allegations of plaintiff's misconduct as factual support for the trustees' revisitation of their 1988 determination of plaintiff's eligibility, and perhaps, as evidence support the stricter review of plaintiff's claim. Second, even if defendants were now offering Foley's alleged misconduct as a justification for denying his benefits, this would not constitute a new "reason." The fundamental reason for the trustees' denial of benefits that plaintiff failed to advance sufficient evidence to qualify for the available-for-work exception. Allegations that Foley lied to the trustees in 1988 about his availability for work would merely support trustees argu-ment that he failed to bring forward sufficient evidence to qualify for the available-for-work exception. Thus, defendants' allegations of misconduct merely support the "reason" plaintiffs have advanced all along, and do not constitute an entirely new reason. Therefore, the denial of plaintiff's application for benefits is subject to an arbitrary and capricious standard of review, under which the denial "will not be disturbed if reasonable," *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir.1997) (quoting *Firestone,* 489 U.S. at 111, 109 S.Ct. at 954).

■   I conclude that even under this deferential standard, a reasonable jury could find that the trustees' decision to deny plaintiff the pension was arbitrary and capricious. I do not believe that *any* reason will suffice to justify a benefits decision under the arbitrary and capricious standard, particularly when there is evidence that a plan provision was interpreted differently in the case of one plan participant than in all other like cases.[11] To uphold a benefits decision that was facially rational but treated a particular plan participant differently from all others similarly situated would be to transform the arbitrary and capricious standard into a judicial rubber stamp and give plan administrators the freedom to single out one plan participant for stricter scrutiny so long as a mere reason could be identified for their decision. I refuse to render the arbitrary and capricious standard lifeless by allowing plan administrators to cloak egregiously disparate treatment in a blanket of rationality.

---

**10.**  *Matuszak,* the only case cited by plaintiff in support of his "new reason" argument, involved far different facts than the present case. There, the plan administrator had articulated only one reason for the denial of benefits at the time of denial, and discarded that one reason in favor of an new, alternative reason at trial. *See Matuszak,* 927 F.2d at 322, n. 1. Here, defendants have not disavowed any of the reasons given at the time Foley's benefits were denied, nor have they advanced novel reasons to this Court.

**11.**  The Court of Appeals for the Third Circuit and other circuit courts have suggested that the disparate treatment of similarly situated individuals by a plan could be found to be arbitrary and capricious. *See DeWitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 519 n. 3 (3d Cir.1997); *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1038 (7th Cir. 1990); *Varhola v. Doe,* 820 F.2d 809, 816 (6th Cir.1987).

There is evidence in this case that plaintiff was denied eligibility for accrued pension credits because a stricter interpretation of a plan provision was applied to him, and not applied to any other similarly situated plan participants. This evidence takes the form of the "Confidential Report to the Trustees of the IBEW 98 Pension Plan Regarding Edward Foley," ("Confidential Report") which stated that the available-for-work exception "has been applied liberally," yet recommended that this exception be construed "much more strictly" by requiring additional evidence of availability for work in Foley's case. (Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 6, "Confidential Report to the Trustees of the IBEW 98 Pension Plan Regarding Edward Foley," at 8).[12] While the report went on to say that other individuals' eligibility would have to be reviewed under this stricter standard, there is no evidence that anyone but Foley was subjected to the stricter standard.[13] The minutes of the trustees' meeting at which plaintiff's application for benefits was denied cited a lack of evidence of plaintiff's inability to obtain work during his break in service, raising an inference that plaintiff was subjected to the stricter evidentiary requirement recommended in the Confidential Report. (Plaintiff's Motion for Partial Summary Judgment, Exh. O, Minutes of the Special Meeting of the Board of Trustees of the I.B.E.W. Local Union No. 98 Pension Fund, Nov. 22, 1996). On this basis, a reasonable jury could find that defendants' treatment of Foley was arbitrary and capricious.[14]

While the Confidential Report is persuasive evidence, it does not warrant granting plaintiff's motion for summary judgment. The report sets forth the findings of an investigation, and makes recommendations

12. Attached to that report was Exhibit 4, in which other plan participants whose eligibility for the available-for-work exception was considered by the trustees were listed, and the factors considered by the trustees in deciding their eligibility for the exception were noted. According to that list, only one of the 21 participants who sought the exception was denied, and many of the participants apparently produced less evidence of their availability for work than plaintiff. In fact, one participant produced no evidence at all, and yet was determined eligible for benefits under the availability for work experience. (Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 6, Exhibits to Confidential Report, at 4).

13. In fact, there is affirmative evidence that Foley was the only individual to which the stricter standard was applied, as indicated by the following exchange during the deposition of trustee Thomas J. Reilly, Jr.

Q. So, correct me if I'm wrong, then, the trustees adopted a stricter standard of review to review [Foley's] case, but they did not adopt that stricter standard of review for the other individuals listed in Exhibit 4?
A. Correct.
(Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 17, Reilley Deposition, at 58).

14. Defendants argue that plaintiff was not treated in a discriminatory matter, and that his claim was simply reviewed more carefully than others because of allegations that plaintiff had previously .misled the trustees concerning his availability for work during his break in service. This argument is specious. The trustees were well advised to review Foley's claim for benefits in light of the accusations of misconduct leveled against him. However, they were not obliged to set a higher evidentiary threshold for plaintiff, and no one else, simply because an accusation had been made. In other words, the mere review of plaintiff's eligibility presents no problem for defendants; it is the stricter interpretation applied to the availability for work exception, and the consequent higher burden placed on plaintiff, that presents a serious question of capriciousness. Plaintiff has produced evidence that the trustees not only reviewed his claim, but held him to a higher evidentiary standard than any other applicant. (Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 6, "Confidential Report to the Trustees of the IBEW 98 Pension Plan Regarding Edward Foley," Exh. 17, Reilley Deposition, at 58; Plaintiff's Motion for Partial Summary Judgment, Exh. O, Minutes of the Special Meeting of the Board of Trustees of the I.B.E.W. Local Union No. 98 Pension Fund, Nov. 22, 1996).

to the trustees; there remains a genuine issue of material fact as to whether the trustees in fact adopted the recommendation of the report and applied stricter scrutiny to Foley's application. There is no express mention of applying a stricter standard in the minutes of the trustees' meeting in which Foley's eligibility for pre-break-in-service pension credits was denied. (Plaintiff's Motion for Partial Summary Judgment, Exh. O, Minutes of the Special Meeting of the Board of ·Trustees of the I.B.E.W. Local Union No. 98 Pension Fund, Nov. 22, 1996). While plaintiff's evidence raises an inference of disparate treatment, it is not conclusive, and a reasonable jury could find that plaintiff was not treated differently than other similarly situated individuals. Therefore plaintiff's motion for summary judgment as to his claim for benefits under ERISA will be denied.

The Confidential Report does, however, defeat defendants motion for summary judgment as to plaintiff's claim for benefits. A reasonable jury could find on the basis of the report and the deposition of Thomas J. Reilley, Jr. (Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 17, Reilley Deposition, at 58), that plaintiff was the only person whose petition under the available-for-work exception was subjected to a stricter level of scrutiny. Therefore, defendants motion for summary judgment on plaintiff's claim for benefits under ERISA will be denied.

### 3. Merits of Equitable Relief Claims Under § 1132(a)(3)

Plaintiff also seeks equitable relief under 29 U.S.C. § 1132(a)(3) for defendants' alleged breaches of fiduciary duties. Defendants argue that plaintiff is not entitled to equitable relief because he has not requested appropriate equitable relief and merely seeks relief that he could not receive under § 1132(a)(1)(B); that is, recovery of benefits. Plaintiff, defendants argue, has improperly disguised a claim for benefits as an action for equitable relief.

Though they rely heavily on it, defendants apparently have not carefully analyzed the Supreme Court's decision in *Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). *Varity* involved a company that duped employees in less profitable divisions into transferring their non-pension benefits into a new plan. *See Varity*, 516 U.S. at 494, 116 S.Ct. at 1069. The new plan became insolvent within two years, and the employees lost their ·accrued non-pension benefits completely. *See id.* The district court ordered the employer to reinstate its former employees into the company's old plan, and the Court of Appeals for the Eighth Circuit affirmed. *See id.* at 495, 116 S.Ct. at 1069. The Supreme Court also affirmed, holding that the order to reinstate the employees into the old plan under § 1132(a)(3) was "appropriate" where other relief was unavailable under ERISA. *See id.* at 515, 116 S.Ct. at 1079. The Supreme Court so concluded despite the fact that a reinstatement would have essentially the same effect as recovery of benefits. Furthermore, the Court of Appeals for the Third Circuit has held that § 1132(a)(3) does not preclude the awarding of the full range of equitable remedies, including injunctions, of appropriate, or even monetary restitution of back benefits not otherwise available. *See In Re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 57 F.3d 1255, 1269 (3d Cir.1995) (citing *Curcio*, 33 F.3d at 238–39); *see also Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir.1994), *aff'd*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). I thus conclude that plaintiff has requested appropriate equitable relief under § 1132(a)(3).[15]

---

**15.** There is a legal question as to whether or not plaintiff may seek both recovery of benefits under § 1132(a)(1)(B) and equitable relief § 1132(a)(3). Section 1132(a)(3) has been referred to as a "catch-all" provision, and a "safety net, offering appropriate equitable relief for injuries cause by violations that § 502 does not elsewhere adequately remedy."

In considering the relief plaintiff has requested, I must determine whether plaintiff has produced sufficient evidence to convince a reasonable jury that defendants engaged in conduct that warrants an award of equitable relief. Plaintiff alleges numerous breaches of fiduciary duties, which are compensable under § 1132(a)(3). *See Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1012 (3d Cir.1997) ("After *Varity* there is little doubt that ERISA provides plan participants an equitable cause of action for an administrator's breach of fiduciary duty.") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 513, 116 S.Ct. 1065, 1078, 134 L.Ed.2d 130 (1996)). ERISA does not define specific fiduciary duties; rather, it sets forth the standard of care and leaves to the courts the determination of what constitutes a breach of a fiduciary duty. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993).[16] Plaintiff alleges two major breaches by the Plan Defendants: disparate treatment and equitable estoppel.[17]

### a. Disparate Treatment

Foley states that the plan was orally amended in a way that treated him differently than other applicants by requiring him to make a more substantial show-

---

*Harte v. Bethlehem Steel Corp.*, 204 F.3d 442 (3d Cir.2000)2000 U.S.App.LEXIS 2928 (quoting *Varity*, 516 U.S. at 512, 116 S.Ct. at 1078). Some courts have thus concluded that a plaintiff may not bring a claim under § 1132(a)(3) where a claim could be brought under § 1132(a)(1)(B). *See e.g., Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1005 (8th Cir.1996) (finding equitable relief not appropriate because plaintiff provided adequate relief by right to bring claim for benefits under § 502(a)(1)(B)). I am not certain that this is so. Apparently, these courts have relied on the Supreme Court's observation in *Varity* that equitable relief could be sought only when other remedies were "unavailable" to plaintiff. However, it is unclear to me what the Supreme Court meant by "unavailable," i.e. whether the Court intended to refer to remedies for which plaintiff could not state a claim, or remedies upon which plaintiff could not prevail at trial, or something else. I do not decide this question today and hold that plaintiff may continue to seek relief under both § 1132(a)(1)(B) and § 1132(a)(3). If, however, the plaintiff wishes to drop one of these claims as duplicative or the parties desire to brief this issue at a later date, the Court will entertain such requests.

16. ERISA states:
[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
  (A) for the exclusive purpose of:
    (i) providing benefits to participants and their beneficiaries; and
    (ii) defraying reasonable expenses of administering the plan;
  (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .
29 U.S.C. § 1104.

17. Plaintiff also submits a laundry list of other ways in which the Plan Defendants allegedly violated their fiduciary duties by (1) amending the plan; (2) ignoring the advice of counsel; (3) failing to keep minutes of meetings at which decisions concerning plaintiff's eligibility were made; (4) failing to place a union trustee on the subcommittee; (6) failing to respond to his application for benefits in a timely fashion; and (6) releasing information about his pension to the local union board.

On the first point, I note that the there is no evidence that the plan was amended. See infra, p. 28. Furthermore, standing alone, a plan amendment does not raise to the level of a breach of a fiduciary duty. *See Bennett v. Conrail Matched Savings Plan Administrative Committee*, 168 F.3d 671, 679 (3d Cir.), cert. denied, —— U.S. ——, 120 S.Ct. 173, 145 L.Ed.2d 146 (1999) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 437–38, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999)). Likewise, failing to follow the advice of counsel does not give rise to a breach of a fiduciary duty. I do not read *Reich v. Compton*, 57 F.3d 270, 291 (3d Cir.1995) to transform a failure to take an attorney's advice into a cause of action under ERISA. Regardless, I conclude that a reasonable jury could not find that the trustees breached their duty by not following a recommendation buried in a report that happened to be written by an individual who also was fund counsel. The remaining alleged breaches are minor and procedural in nature and do not rise to the level of a breach of fiduciary duty in the administration of the plan remediable by § 1132(a)(3).

ing as to the available-for-work exception. While the evidence does not indicate that an amendment of the plan took place,[18] plaintiff has produced evidence upon which a reasonable jury could find that a stricter standard was applied to his claim insofar as the trustees required plaintiff and no one else to produce additional evidence of his eligibility under the available-for-work exception. (Plaintiff's Response. to Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, Exh. 6, "Confidential Report to the Trustees of the IBEW 98 Pension Plan Regarding Edward Foley," at 8). The Confidential Report thus raises a genuine issue of material fact as to whether the trustees violated their duty under the plan to ensure that all their "interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated." (Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings and Summary Judgment, Exh. 11, Amendment No. 17 to the Restated Local Union No. 98 IBEW Pension Plan, at 8). Therefore, the Plan Defendants' motion for summary judgment will be denied as to plaintiff's claim for a breach of fiduciary duty based on defendants' disparate treatment of plaintiff.

That said, I also conclude that a reasonable jury could find on the record before me that the Plan Defendants did not violate their fiduciary duty. The Confidential Report does not conclusively establish that the trustees in fact treated plaintiff differently from all other similarly situated individuals, and thus plaintiff's motion for summary judgment will be denied as well.

### b. Equitable Estoppel

Plaintiff asserts claims of equitable estoppel under ERISA on the ground that the trustees should be bound by their 1988 decision to grant him credit for benefits accrued prior to his break in service. Defendants argue that plaintiff has failed to properly state a claim for equitable estoppel.

Assuming, but not deciding, that plaintiff has failed to state a claim for equitable estoppel, plaintiff has not produced sufficient evidence upon which a reasonable jury could rule in his favor on that claim. In order to recover benefits on an equitable estoppel theory under ERISA, a plaintiff must establish "a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances." International Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co., 188 F.3d 130, 151 (3d Cir.1999) ("*UAW*") (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3d Cir. 1995)).

■ A reasonable trier of fact would not find any of these elements satisfied on the record before me. Plaintiff has not demonstrated that any plan representatives made misrepresentations to him; his claim is based merely on truthful communications concerning votes of the trustees. While plaintiff may have relied on the plan's earlier decision in some existential way, but there is no evidence that plaintiff's reliance was detrimental; it is unclear what plaintiff would or could have done to improve his chances of eligibility for the available-for work exception had the trustees not voted the way they did in 1988. Finally, I conclude that there is insufficient evidence of "extraordinary circumstances," which, according to the Court of Appeals for the Third Circuit, includes bad faith or fraud over an extended course of dealings or a particular vulnerability in the claimant. *See UAW*, 188 F.3d at 152. Therefore, defendants' motion for summary judgment will be granted as to plaintiff's claim for equitable relief on the basis of estoppel.

### 4. *Statutory Penalties Under 29 U.S.C. § 1132(c)*

Plaintiff seeks summary judgment on his claim for an award of statutory penal-

---

18. *See infra* text, p. 813.

ties against defendants under ERISA, 29 U.S.C. § 1132(c) for their failure to provide him with a statement of his benefits pursuant to 29 U.S.C. § 1025(a)(1) and (2). Leaving aside for the moment the issue of who would be the proper defendant under this claim, the key question is whether Foley made a request in writing for a statement of benefits, as required under § 1025(a)(1) and (2).[19] This requirement has been strictly construed by the Court of Appeals for the Third Circuit. *See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan,* 24 F.3d 1491, 1505 (3d Cir.1994); *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995); *see also Crotty v. Cook,* 121 F.3d 541, 547–48 (9th Cir.1997).

Plaintiff offers no evidence that he submitted a written request for a statement of benefits to the plan, the trustees, or the plan administrator. The sole evidence plaintiff advances in this regard is a notation by Fund Manager Lawrence McLaughlin to the trustees that reads, in its entirety, "The Fund Manager, requests Trustee direction concerning the information to be included on Mr. Foley's Annual Participant Statement for Plan Year ended December 31, 1994." No reasonable jury could interpret this administrative notation to be a written request for a statement of benefits, nor could one conclude that it was submitted on Foley's behalf. Foley offers

19. Section 1025(a) reads:
Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—
(1) the total benefits accrued, and
(2) the nonforfeitable pensions benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

20. Furthermore, district courts have discretion in deciding whether or not to assess penalties under § 1132(c), and courts have considered factors such as bad faith, intentional misconduct, the length of the delay, the number of requests made, and the existence of any prejudice to the participant. *See Boyadjian v. Cigna Companies,* 973 F.Supp. 500, 505 (D.N.J.1997). Even if a written request

no evidence that this notation was submitted at his request, nor does he suggest that he made any other written request for a statement of benefits personally or through counsel.[20]

Therefore, Foley's motion for summary judgment on his claim for sanctions will be denied. Furthermore, because there is no genuine issue of material fact as to whether plaintiff submitted a request, summary judgment will be granted in favor of defendants on plaintiff's claim for sanctions.

### 5. *Attorneys' Fees Under 29 U.S.C. § 1132(g)(1)*

As defendants correctly note, plaintiff's request for summary judgment on his claim for attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1), puts the cart before the horse. Judgments as to attorneys' fees are premature at this stage, and are properly considered after the merits phase of the case. The Court will consider the arguments of plaintiff and defendant on the matter of attorneys' fees and costs at a later time.

### C. LMRDA Claims

Plaintiff avers that his free speech rights under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2)[21] were violated by defendants'

were made, these factors would militate against the award of sanctions in this case.

21. Section 411(a)(2) provides:
Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from

conduct and seeks recovery under LMRDA, 29 U.S.C. §§ 412[22] and 529.[23] Defendants move for summary judgment on the ground that plaintiff has produced insufficient evidence to sustain a claim under LMRDA.[24]

Even taking an "expansive view of union speech rights," as I am required to, *Ruocchio v. United Transp. Union, Local 60,* 181 F.3d 376, 386 (3d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000) (citing *Mallick v. International Brotherhood of Electrical Workers,* 644 F.2d 228 (3d Cir.1981) and *Semancik v. United Mine Workers of America District No. 5,* 466 F.2d 144 (3d Cir.1972)), I cannot conclude that plaintiff presents a genuine issue of material fact as to whether his free speech rights were violated.

■ First, plaintiff's claim for relief under 29 U.S.C. § 529 cannot stand, because plaintiff has neither claimed nor shown through evidence that the union formally fined, suspended, expelled, or otherwise disciplined Foley. The Supreme Court has held that the phrase "otherwise discipline" is limited to "punishment authorized by the union as a collective entity to enforce its rules." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 90, 110 S.Ct. 424, 438–39, 107 L.Ed.2d 388 (1989). The only authorized actions alleged in the complaint are those of the trustees and other plan defendants; there is neither allegation nor evidence that the Union Defendants took action in their capacity as union officials against Foley that constituted formal punishment intended to enforce union rules.[25] At most, plaintiff alleges that a member or members of the union raised questions about his pension eligibility in retaliation for prior conduct related to union politics. This is essentially what took place in *Breininger,*[26] and the Supreme Court nevertheless concluded that no claim under ERISA had been stated. *See id.* at 94, 110 S.Ct. at 440; *see also Brenner v. Local 514, United Bhd. of Carpenters & Joiners of America,* 927 F.2d 1283, 1297 (3d Cir. 1991). Thus, summary judgment will be granted to defendants on plaintiff's claim under § 529.

■ Foley's claims under 29 U.S.C. § 411(a)(2) fail because he has not produced sufficient evidence that the decision regarding his eligibility for pension benefits had anything to do with the exercise of his free speech rights guaranteed under § 411(a)(2). There is nothing on the rec-

conduct that would interfere with its performance of its legal or contractual obligations.

22. Section 412 reads, in pertinent part,
Any person whose rights secured by the provisions of this subchapter have been infringed by any violations of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

23. Section 529 states that
it shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any *right to* which he is entitled under the provisions of this [Act].

24. It should be noted that plaintiff's LMRDA claims against the Plan Defendants cannot stand; LMRDA governs unions and union members, and is meant to protect the rights of individuals to participate in unions. *Morrissey v. National Maritime Union of America,* 544 F.2d 19 (2d Cir.1976). LMRDA does not govern pension plans or pension fund trustees. Thus, plaintiff may proceed under LMRDA only against the Union Defendants.

25. To the extent that plaintiff alleges anything against the individual Union Defendants, Dougherty and Nielson, he alleges conduct taken in their capacity as trustees, not as union officials.

26. In *Breininger,* the plaintiff claimed that union officers failed to refer plaintiff for employment because he supported a political rival of theirs in a union election. The Court held that this did not constitute discipline; merely "personal vendettas." *Id.* at 94, 110 S.Ct. at 440.

ord that would lead a reasonable juror to the conclusion that the trustees denied him the benefits he accrued from 1959–71 because he engaged in expressive activity protected by LMRDA. At best, plaintiff's evidence shows that a non-trustee union member, Fred Compton, had a "personal vendetta," *Breininger*, 493 U.S. at 94, 110 S.Ct. at 440, against Foley because Foley had defeated him in a prior union election, and sought to retaliate by raising questions about Foley's pension eligibility. While Compton's complaints may have led the trustees to review Foley's eligibility, Foley has no evidence that the trustees' decision on his pension benefit eligibility was tainted by a motive to suppress, deter, or punish his free speech rights under § 411(a)(2).

Two fairly recent district court cases are instructive. *Webb v. Local 1814*, No. 94–2739, 1996 U.S.Dist.LEXIS 20516 (E.D.N.Y. Feb. 9, 1996), involved longshoreman plaintiffs whose wage credits were docked due to their unavailability for work during a union conference.[27] Plaintiffs alleged that their wage credits were docked at a higher level than they should have been in retaliation against the reform proposals plaintiffs had presented at union conferences and brought suit under ERISA and LMRDA. The district court held that § 411(a)(2) requires "a direct infringement of membership rights or a real threat to the democratic integrity of the union." *Webb*, 1996 U.S.Dist.LEXIS 20516, at * 44 (quoting *Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41, 49 (2d Cir.1989)). The court held that the right to the credits was not inherent or incident in union membership, and that the reduction of the credits was not considered a "direct interference" in their membership rights. *Id.* at * 46;

*see also Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) (discharge of union employees in retaliation for union election activities merely an indirect interference with membership rights, and thus not actionable under LMRDA).

The similarities between the two cases are manifest: both involve (1) plaintiffs who allege they were denied benefit credits (2) under a provision that required them to be available for work (3) when a higher level of scrutiny was applied to their benefits claims, (4) allegedly because of plaintiffs' expressive activity. The major difference is that *Webb* involved a far more direct link than in this case; there, plaintiffs had direct evidence of expressive activity they had engaged in proximate to the denial of wage credits, whereas here, Foley points to amorphous, years-old activities that have no direct link to his denial of benefits. The court in *Webb* concluded, on more compelling evidence than that on the record in this case, that plaintiff could not survive summary judgment under LMRDA because there was no direct interference in a protected right. I reach the same conclusion here; plaintiff has not demonstrated a direct nexus between any expressive activity he engaged in and the denial of benefits.

A compelling analogy may also be drawn between the instant action and *Lennon v. Walsh*, 798 F.Supp. 845 (D.Mass.1992). There, plaintiff asserted claims under ERISA and LMRDA arising out of his removal from union office and the denial of his pension benefits. In language strikingly similar to that of plaintiff in the instant action, the *Lennon* plaintiff claimed that the denial of his pensions benefits "directly interfered with his union membership

---

**27.** Plaintiffs in *Webb* were operating under a wage-guarantee provision under which participants who made themselves available for work when there was work to perform would receive wages, regardless of whether or not they worked on a given day. If plaintiffs failed to make themselves available, they received two kinds of debits: a higher debit that denied them eight hours of credits, and a lower debit applied when sufficient reasons was given for unavailability. The *Webb* plaintiffs, like Foley, had expected a lower level of scrutiny to be applied to their work credits, but a higher level of scrutiny was applied by Fund officials.

rights because the denial of benefits was part of a concerted effort to quash his dissent." *Id.* at 850. The *Lennon* court observed,

> If this court were to adopt plaintiff's reasoning, however, every person denied benefits by a union fund or plan might assert a cause of action under the LMRDA. Moreover, allowing plaintiff's claim would eviscerate the requirement that to state a claim under Title I of the LMRDA a plaintiff must allege that the challenged action directly infringed the plaintiff's *union membership rights*. Accordingly, plaintiff's claims against the Staff Pensions Plan must be dismissed.

*Id.* Here, Foley seeks to assert a claim on an even shakier evidentiary foundation than the plaintiff in *Lennon*, who alleged that he was removed from union office and denied benefits because of his support of a change in the union's leadership succession and was thereafter harassed by those opposed to the change in myriad ways related directly to his union membership. *See id.* at 847. Foley does not advance substantial evidence of a "concerted effort," nor has he produced evidence that he was harassed in other respects related to his union membership; the only allegation supported by the record is that Foley's pension benefits were withheld.

I concur with the *Lennon* court that to allow a claim alleging merely the withholding of benefits to proceed under LMRDA would contravene the language of LMRDA and the jurisprudence of the Supreme Court and the circuit courts, particularly in a case such as this where there is no evidence of direct interference with union membership rights protected under § 411. A pension benefits-related claim is properly asserted under ERISA, which plaintiff

has done. His attempt to eke further mileage out of his denial of pension credits stalls before this Court. Defendants' motion for summary judgment will be granted on plaintiff's claims under LMRDA.

### C. Alleged Plan Amendment

Plaintiff also asserts claims under ERISA, LMRDA and, remarkably, even the Internal Revenue Code, alleging that the trustees improperly amended the plan in requiring plaintiff to produce evidence of his availability for work and the unavailability of work during his break in service.

The evidence before me evinces nothing that could be construed as an amendment to the plan. Plaintiff points to the Confidential Report in which it was recommended that the available-for-work exception should be construed more strictly in Foley's case. This is not a plan amendment; it is merely an interpretation of the plan by the trustees. The minutes of the trustees November 22, 1996, meeting, at which it considered Foley's claim, contain no reference to an amendment to the plan.

No reasonable jury could conclude on this record that the plan was amended. Therefore defendants' motion for summary judgment on plaintiff's claims under Count V will be granted.

### D. Defendants' Counterclaims

The Plan Defendants assert three counterclaims against plaintiff for alleged breaches of fiduciary duties during his time as a plan trustee.[28] Plaintiff moves for summary judgment on all three counterclaims.

In his memorandum, plaintiff points to an absence of a genuine issue of material fact on each claim. (Memorandum of Law in Support of Plaintiff's Motion for Partial

28. Count I alleges that plaintiff engaged in unauthorized negotiations concerning the use of plan funds to bankroll the renovation of a Philadelphia hotel, and that plaintiff's lapses exposed the pension fund to the possibility of investigation by the Department of Labor. Count II alleges that plaintiff breached his duty of loyalty to the trust by trying in 1988 to convince co-trustees to rule in his favor concerning his benefits. Count III alleges that plaintiff withheld information from the trustees concerning possible claims other plan participants might bring against the trustees.

Summary Judgment, at 36–39). By doing so, plaintiff has shifted the burden under Rule 56(c) to defendants, who must now "go beyond the pleadings and by their own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Defendants have not done so. Their four-sentence response to plaintiff's motion for summary judgment on defendants' counterclaims is paltry; they make no reference to any evidence on the record that could form the basis of a reasonable jury's verdict on defendants' favor on their counterclaims. Thus, I conclude that defendants have not carried their burden on summary judgment, and plaintiff's motion for summary judgment on defendants' counterclaims will be granted.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment will be granted as to defendants' counterclaims, but denied as to plaintiff's claims, and Plan Defendants' motion will be granted as to Counts II, III, IV, and V, and denied as to Count I, and the Union Defendants motion will be granted in full. Subject to the above analysis, plaintiff may proceed to trial on the ERISA claims in Count I of the complaint, but may not proceed under LMRDA or ERISA on the claims asserted in Counts II, III, IV, and V.