Edward J. **FOLEY,** Sr., Plaintiff,

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LO-CAL UNION 98 PENSION FUND, et al., Defendants.**

Civil Action No. 98–906.

United States District Court, E.D. Pennsylvania.

Aug. 25, 2000.

Edward J. Foley, Jr., Philadelphia, PA, for Plaintiff.

Richard B. Sigmund, Philadelphia, PA, for Defendants.

## *FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT*

LOWELL A. REED, Jr., Senior District Judge.

This action arises out of the decision of defendant International Brotherhood of Electrical Workers Local Union 98 Pen-

sion Fund to deny a portion of the pension benefits sought by plaintiff Edward J. Foley, Sr. Plaintiff seeks to recover the denied portion of his pension benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Having conducted a non-jury civil trial on August 21 and 22, 2000, at which counsel for all parties participated, and based upon the pleadings, the exhibits, the stipulations, and testimony presented at trial, and the arguments of counsel, this Court now makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT [1]

Plaintiff Edward J. Foley, Sr. ("Foley"), is a participant in the International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan ("Plan"). (Revised Stipulated Facts, at ¶ 23) ("Stipulation").

The plan is administered by the Board of Trustees ("Trustees") of defendant International Brotherhood of Electrical Workers Local Union No. 98 Pension Fund ("Fund"), with the assistance of counsel and staff. (Stipulation, at ¶ 5).

The Plan provides that for the years prior to 1975, a participant suffers a break in service and forfeits all prior credited service if he or she failed to work in covered employment for at least a total of 600 hours in a consecutive two-year-period. (Plan, Art. I, § C(1)(a), (b), pp. 2–3, Plaintiff Exh. 1; Stipulation, at ¶ 7)

The Plan contains an exception from its break-in-service rule under which a participant will be excused from his or her break in service and will not lose the pension credits already earned for those prior years if was, during the break in service, "continuously available for work within the jurisdiction of the Union and was unable to obtain Covered Employment" ("break-in-service exception"). (Plan, Art. I, Section C(1)(c)(i), p. 3, Plaintiff's Exh. 1; Stipulation, at ¶ 8).

The Plan provides "that all . . . interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated." (Plan, Art. V(A)(1), p. 45, Plaintiff's Exh. 1).

Plaintiff worked in covered employment during the years 1959 to 1971, earning 12.5 years of pension credits under the Plan. (Stipulation, at ¶ 24).

Plaintiff did not work in covered employment from 1972 to 1981, and thus experienced a break in service under the Plan. (Stipulation, at ¶¶ 20, 27).

Plaintiff returned to covered employment in 1981, and retired in 1996. (Testimony of Edward J. Foley, Sr.).

In December 1988, the Trustees resolved to grant plaintiff eligibility to receive the pension credits accumulated prior to his break in service under the break-in-service exception. The minutes of the 1988 meeting reflect that Foley's 12.5 years of credited service accrued from 1959–71 were restored after an investigation by Fund counsel revealed that Foley was available for work but unable to locate work for the period 1972 through 1980. (Stipulation, at ¶¶ 10, 29).

On October 28, 1994, former Trustee Fred J. Compton sent a letter to Fund counsel, Laurance E. Baccini, in which Compton accused Foley of misleading the Trustees with respect to the 1988 resolution to grant Foley an exception from the loss of accrued credits under the break-in-service rule. (Stipulation, at ¶¶ 13, 30).

In response to Compton's letter, the Trustees created a subcommittee consisting of Trustee Thomas J. Reilly, Jr., and Fund counsel, Laurance E. Baccini, as staff, to investigate Compton's allegations. (Stipulation, at ¶ 31).

The subcommittee conducted an investigation and prepared a Confidential Report

---

**1.** To the extent that these findings of fact include conclusions of law or mixed findings of fact and conclusions of law, these findings and conclusions are hereby adopted by this Court.

to the Trustees of the I.B.E.W. Local 98 Pension Plan Regarding Edward Foley ("Confidential Report"). (Stipulation, at ¶¶ 15, 32).

The Confidential Report was presented to the Trustees at some time prior to February 22, 1995. (Testimony of Thomas J. Reilly, Jr., Roy Dantz, Dennis Link).

The Confidential Report contained a finding that prior to Foley's case coming before the Trustees, the "available for work-no work available exception ha[d] been applied liberally in almost all cases in which it has been invoked." (Confidential Report, at 6, Plaintiff's Exh. 2).

Under a sub-heading entitled "Construe the available for work-no work available exception much more strictly," the report found a lack of evidence of Foley's availability for work from 1972–81 and observed, "This is nothing unique as to Mr. Foley's case. Almost all of the other participants who received the benefit of the available for work-no work available exception had similarly sketchy employment information that was made available to the Trustees." (Confidential Report, at 8, Plaintiff's Exh. 2).

The Confidential Report further provided, "If the Trustees decide to examine Mr. Foley's record in light of a stricter application of the available for work-no work available exception, all of the other pension records for those individuals set forth on Exhibit 4 would have to be examined and appropriate adjustments made." (Confidential Report, 8–9, Plaintiff's Exh. 2; Stipulation, at ¶ 34).

Attached to the Confidential Report was Exhibit 4 thereto; a list of 21 plan participants who had sought eligibility for the break-in-service exception prior to the Foley matter. (Confidential Report, Exh. 4, Plaintiff's Exh. 2).

On February 22, 1995, during a special meeting, the Trustees discussed the Confidential Report and additional evidence concerning plaintiff's availability for work and the availability of work during plaintiff's break in service, and unanimously resolved to (1) reverse their 1988 decision granting Foley eligibility for his 1959–71 pension credits under the break-in-service exception, (2) offer Foley an opportunity to resubmit the issue to the Trustees with additional documentation; and (3) reinvestigate all other prior similar situations for the purpose of determining if the decision at the relevant time was supported by evidence. (Notes of Dennis Link, Feb. 23, 1995, Plaintiff's Exh. 26; Stipulation, at ¶¶ 16, 35).

On July 22, 1996, Foley applied for an early retirement pension and submitted an application for benefits to the Fund. (Stipulation, at ¶ 37).

The Trustees considered Foley's application for benefits during a special meeting on November 22, 1996. The Trustees denied his application for pension benefits earned during the years 1959–71 because "there remain[ed] insufficient evidence as to the unavailability of work and Mr. Foley's inability to obtain covered employment during the Plan years 1972, 1973, and 1974." (Minutes of the Special Meeting of the Board of Trustees of the I.B.E.W. Local Union No. 98 Pension Fund, Nov. 22, 1996. Plaintiff's Exh. 16; Stipulation, at ¶¶ 21, 38, 39).

The decision of the Trustees in November 1996 to deny Foley's application for pension credits accrued from 1959–71 was based on their February 1995 resolution declaring plaintiff in eligible for the break-in-service exception, and the fact that Foley had presented no new evidence to support his application between February 1995 and November 1996. (Letter of Scott Ernsberger, April 16, 1997, Plaintiff's Exh. 20; Minutes of Special Meeting of the Board of Trustees of the I.B.E.W. Local Union No. 98 Pension Fund, Nov. 22, 1996, Plaintiff's Exh. 16).

On October 22, 1997, the Trustees rejected Foley's appeal of the denial of his application for credit for the years 1959–

71. (Letter of Laurence E. Baccini, Oct. 22, 1997, Defendants' Exh. 17).

In making the February 1995, November 1996, and October 1997 decisions, the Trustees relied on the evidence and recommendations contained in the Confidential Report. (Testimony of Thomas J. Reilly, Jr., Roy Dantz, Dennis Link, John Dougherty, Larry Bradley).

The Trustees informed plaintiff through Fund staff and counsel that to prevail on his claim for pension benefits for the years 1959–71, Foley needed to produce additional evidence, in the form of affidavits, documents, or otherwise, to prove his availability for work and the unavailability of work during the years of his break in service 1972, 1973, and 1974. (Stipulation, at ¶ 36; Letter of Scott Ernsberger, April 16, 1997, at 3–4, Plaintiff's Exh. 20; Letter of Laurence Baccini, Oct. 22, 1997, at 3, Defendants' Exh. 17).

---

**2.** During closing arguments, counsel for defendants argued that plaintiff was not similarly situated to the persons listed in Exhibit 4 of the Confidential Report by drawing several distinctions that I find are not meaningful or persuasive. Counsel asserted that a number of the individuals in Exhibit 4 had signed the Local's out-of work book, and that plaintiff had not. However, the Exhibit 4 reflects that both Terry Keim and Daniel P. Murry were members of the Union and therefore "did not have to" or were "not required to" sign the book. (Confidential Report, Exhibit 4). Foley remained a member of the union during his break in service, and therefore, if treated equally, was not required to sign the book. A number of individuals listed in Exhibit 4 who apparently did not sign the book (Murry, Scott, Rogan, Keim, and Oechsle) were granted the break-in-service exception nonetheless.

Defendants produced evidence that plaintiff claimed he was unable to obtain work during a time when there was plenty of work available to union members (1972–74), however, according to Exhibit 4, the Trustees granted eligibility under the break-in-service exception, and therefore necessarily concluded that work was not available, to a number of individuals for those years, including Joseph Zolo (1974), William Lambert (1974), David Osechsle (1974), Charles Scott (1974), Garland Freeman (1974), Ronald Rubin (1974), Richard Mariano (1972–74), James R. Scott (1974), and Robert Robinson (1973–74).

In general, Foley was similarly situated to all journeyman members of Local 98 with respect to his application for pension benefits, and therefore the Trustees were required under the terms of the Plan to treat his application in the same manner they would treat the application of any journeyman member of Local 98. (Plan, at 45, Plaintiff's Exh. 1; Testimony of Roy Dantz).

In particular, because Foley sought to qualify for the break-in-service exception, he was similarly situated to all journeyman members of Local 98 who had applied for the break-in-service provision, including those listed on Exhibit 4 to the Confidential Report. (Confidential Report, at 8–9, Exh. 4, Plaintiff's Exh. 2). The individuals listed in Exhibit 4 are similarly situated to Foley despite minor distinctions between the evidence advanced by Foley and the evidence presented by those individuals.[2]

---

Defendants also argued that the allegations of impropriety that were raised in Compton's letter concerning Foley's pension benefits demanded different treatment. However, as noted in this Court's decision on summary judgment, the letter might have justified a review of plaintiff's claim to determine whether there was any impropriety, but it did not justify the setting of a higher evidentiary threshold for plaintiff, and no one else, simply because an accusation had been made. *See Foley v. International Broth. of Elec. Workers Local 98 Pension Fund*, 91 F.Supp.2d 797, 806 n. 14 (E.D.Pa.2000). Morever, the Confidential Report summarizing the investigation triggered by the letter presented no evidence of wrongdoing or deceit on the part of Foley, and Fund counsel acknowledged to Foley the absence of evidence of improper conduct, and that the Trustee's demand for additional information was not based on a finding of impropriety. (Undated Notes of Laurence E. Baccini, Fund Counsel).

Even if there were minor differences between Foley and the individuals listed in Exhibit 4, the result of my decision today would be no different. Foley is one of a number of individuals who sought refuge under the break-in-service exception, and the evidence produced a trial demonstrates that a number of other individuals who, like Foley, produced a miniscule amount of evidence to show that they were available for work and that work was available, were granted the break-in-ser-

The Court accepts the testimony of the Trustees that they believed in good faith, both at the time they made their decision and at the time of their testimony, that they did not treat Foley differently from those similarly situated or hold Foley to a stricter standard of proof with respect to his eligibility for the break-in-service exception. (Testimony of Thomas J. Reilly, Jr., Roy Dantz, Dennis Link, Larry Bradley, John J. Dougherty).

Direct evidence of the subjective belief of the Trustees, is not dispositive. Also relevant is circumstantial evidence from which this Court infers that despite the fact that the Trustees believed they were not applying a stricter standard in their consideration of plaintiff's eligibility for the break-in-service exception, the Trustees *in fact* held plaintiff to a stricter standard of proof than any other individual in like circumstances.

There is no evidence that a subcommittee of the Board of Trustees was formed after February 1995 to investigate any other individual seeking eligibility under the break-in-service exception, including those individuals listed in Exhibit 4 of the Confidential Report. (Testimony of Thomas J. Reilly, Jr.).

There is no evidence that, following the February 1995 resolution of the Trustees to deny Foley eligibility for pension credits he accumulated from 1959–71, the Trustees received or considered any written staff or committee report concerning any individuals who had applied for the break-in-service exception, including the individuals listed in Exhibit 4. (Testimony of John J. Dougherty).

There is no persuasive evidence that, following the February 1995 resolution of the Trustees, any investigation of other persons who had sought eligibility for pension credits under the break-in-service exception, including the 21 individuals whose names appear in Exhibit 4 to the Confidential Report, was conducted by the Trustees or by Fund staff. (Testimony of Scott Ernsberger, Thomas J. Reilly, Jr., Roy Dantz, Dennis Link,[3] John J. Dougherty).

There is no persuasive evidence that, following the February 1995 resolution of the Trustees, any individuals similarly situated to Foley were required to produce additional evidence of their availability for work or the availability of work during their alleged break in service. (*Id.*).

There is no persuasive evidence that, prior to February 1995, the Trustees ever formed a subcommittee to investigate any other plan participant's pension application, received or considered a written report upon the application of any other individual for pension benefits, or required a person to produce additional evidence of their availability for work or the availability of work under the break-in-service exception. (Testimony of Thomas J. Reilly, Jr.).

Based on the foregoing, the Court finds that plaintiff has proved by a preponderance of the evidence that the Trustees in fact treated Foley differently from other persons similarly situated to him with respect to his application for pension benefits by subjecting Foley's petition for eligibility under the break-in-service exception to a

---

vice exception, and that Foley was not. The evidence presented at trial proves that Foley was similarly situated to all journeymen who had applied for the break-in-service exception, and there was no persuasive evidence presented at trial that any other individual who applied for the break-in-service exception was investigated by the Trustees at all and no evidence that the Trustees scrutinized the application of any other individual with vigor remotely similar to that which they applied to Foley's application.

**3.** This Court is not persuaded otherwise by the testimony of Dennis Link that he "may have received" additional information about the individuals listed on Exhibit 4 of the Confidential Report; Link could not specify when or in what form or detail that information was received, nor did he produce documentary evidence of such a report. (Testimony of Dennis Link).

stricter standard of review and requiring him to produce evidence beyond that required of journeyman members of Local 98 seeking eligibility for the break-in-service exception.

***Damages***

Based on the uncontroverted evidence of damages presented at trial and in plaintiff's pretrial filings, the Court makes the following findings as to damages:

Plaintiff has accrued 27.5 years of benefit credits under the Plan. (Pension Summary for Edward J. Foley, Sr., Plaintiff's Exh. 4).

Plaintiff's accumulated monthly pension benefit is $1,387.43. (*Id.*)

Plaintiff is entitled to an early retirement benefit under Article II, Section D and Article III, Section B of the Plan. (Plan, at 21–22, 35–36, Plaintiff's Exh. 1).

The amount of pension benefit payments due to Foley under the Plan as of August 1, 2000, with interest, is $78,747.76.

The amount of the early retirement benefit payments due to Foley under the Plan as of August 1, 2000, with interest, is $20,876.89.

The total amount of past-due benefits plaintiff is entitled to recover is $99,624.65.

## III.   CONCLUSIONS OF LAW [4]

This action arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and the parties hereto are bound by the terms of ERISA.

The International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan is a multiemployer pension benefit Plan Pursuant to 29 U.S.C. §§ 1002(2)(A), 1002(37)(A)(ii).

Plaintiff Edward J. Foley, Sr., is a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

The denial of plaintiff's application for benefits is subject to an arbitrary and capricious standard of review by this Court. *See Foley v. International Broth. of Elec. Workers Local 98 Pension Fund*, 91 F.Supp.2d 797, 805 (E.D.Pa.2000) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997)).

■ A decision to deny benefits is arbitrary and capricious if it results in the disparate treatment of one person from all other persons similarly situated. Disparate treatment includes subjecting an individual to a stricter standard of proof than that applied to any other individual similarly situated. *See Foley*, 91 F.Supp.2d at 805–06.

■ Having found that Foley was treated differently from all other persons similarly situated in that his petition for eligibility under the break-in-service exception was subjected to a more demanding evidentiary standard and a stricter level of scrutiny than the petitions of those similarly situated to him (Finding of Fact No. 18), I conclude that the 1996 decision of the Trustees to deny plaintiff's application for benefits for the years 1959–71 was arbitrary and capricious, and that the decision clearly violated the terms of the Plan, which requires "that all ... interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated." (Plan, Art. V, Sec. A, Sub. 1, p. 45, Plaintiff's Exh. 1).

Because the decision of the Trustees to deny plaintiff's application for benefits was arbitrary and capricious and was inconsistent with the terms of the Plan, I conclude that plaintiff is entitled to a recovery of benefits under 29 U.S.C. § 1132(a)(1)(B).

Therefore, judgment will be granted in favor of Foley in the amount of $99,624.65. (Findings of Fact No. 41, 42, 43), and the Trustees will be ordered to reinstate plaintiff's monthly pension benefit.

---

**4.**  To the extent that these conclusions of law include findings of fact or mixed findings of fact and conclusions of law, these findings and conclusions are hereby adopted by this Court.

Because I have determined that plaintiff has an available remedy under 29 U.S.C. § 1132(a)(1)(B), plaintiff may not proceed on his claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). *See Foley,* 91 F.Supp.2d at 807 n. 15. Therefore, the claims against the Fund and all individual defendants under § 1132(a)(3) will be denied.

## IV. VERDICT

Having concluded that plaintiff Edward J. Foley, Sr., is entitled to a recovery of benefits due to him under the terms of the plan pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), and based on the foregoing findings and conclusions, my verdict is in favor of Foley for the amount of monthly pension benefits and an early retirement bonus due as of August 1, 2000, $99,624.65. Furthermore, plaintiff's eligibility for his monthly pension benefit shall be reinstated in a manner consistent with the foregoing and the terms of the Plan.