

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2001

# Foley v. Local 98 Pension

Precedential or Non-Precedential:

Docket 00-2767

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Foley v. Local 98 Pension" (2001). *2001 Decisions.* Paper 259.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/259

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 8, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-2767 and 00-4427

EDWARD J. FOLEY, SR.

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION 98 PENSION FUND;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 98; SCOTT ERNSBERGER; JOHN J.
DOUGHERTY, in his capacity as a TRUSTEE and as an
officer and BUSINESS MANAGER OF LOCAL 98; EDWARD
NIELSON, in his capacity as a TRUSTEE and as an officer
of LOCAL 98; JOSEPH AGRESTI, in his capacity as a
TRUSTEE; THOMAS J. REILLY, JR., in his capacity as a
TRUSTEE; DENNIS LINK, in his capacity as a TRUSTEE;
WILLIAM RHODES, in his capacity as a TRUSTEE; ROY
DANTZ, in his capacity as a TRUSTEE; LARRY J.
BRADLEY, in his capacity as a TRUSTEE; FRED J.
COMPTON

International Brotherhood of Electrical Workers Local
Union 98 Pension Fund, Scott Ernsberger, John J.
Dougherty, in his capacity as a Trustee, Edward Nielson,
in his capacity as a Trustee, Joseph Agresti, in his
capacity as a Trustee, Thomas J. Reilly, Jr., in his
capacity as a Trustee, Dennis Link, in his capacity as a
Trustee, William C. Rhodes, in his capacity as a Trustee,
Roy Dantz, in his capacity as a Former Trustee, and
Larry Bradley, in his capacity as a Former Trustee
(Collectively the "Defendants"),
        Appellants in No. 00-2767

EDWARD J. FOLEY, SR.

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION 98 PENSION FUND;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 98 OF AMERICA; SCOTT
ERNSBERGER; JOHN J. DOUGHERTY, in his capacity as
a TRUSTEE and as an officer and BUSINESS MANAGER
OF LOCAL 98; EDWARD NIELSON, in his capacity as a
TRUSTEE and as an officer of LOCAL 98; JOSEPH
AGRESTI, in his capacity as a TRUSTEE; THOMAS J.
REILLY, JR., in his capacity as a TRUSTEE; DENNIS
LINK, in his capacity as a TRUSTEE; WILLIAM RHODES,
in his capacity as a TRUSTEE; ROY DANTZ, in his
capacity as a TRUSTEE; LAWRENCE J. BRADLEY, in his
capacity as a TRUSTEE,
          Appellants in No. 00-4427

and FRED COMPTON

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 98-906)
District Judge: Honorable Lowell A. Reed, Jr.

Argued October 9, 2001

Before: SCIRICA, GREENBERG, and COWEN,
Circuit Judges

(Filed: November 8, 2001)

        Laurance E. Baccini (argued)
        Linda B. Hollinshead
        Wolf, Block, Schorr & Solis-Cohen
        1650 Arch Street, 22nd Floor
        Philadelphia, PA 19103-2297

2

Richard B. Sigmond
Sagot, Jennings & Sigmond
Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683

    Attorneys for Appellants

Daniel P. McElhatton (argued)
Schubert, Bellwoar, Cahill & Quinn
Two Penn Center, Suite 1400
1500 JFK Blvd.
Philadelphia, PA 19102-1890

Edward J. Foley, Jr.
Garagozzo, Foley & Collazzo
410 N. 8th Street
Philadelphia, PA 19123-3903

    Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on appeal from an
order of the district court entering judgment in favor of
appellee Edward J. Foley, Sr., and against the International
Brotherhood of Electrical Workers Local Union 98 Pension
Fund (the "Pension Fund" or the "Fund"). 1 Foley claims that
the Pension Fund's Board of Trustees ("Trustees")
improperly declined to grant him an exception to the
pension Plan's service eligibility provisions that would have
permitted him to receive a higher level of benefits than that

_____

1. There is some question as to which of the defendants the district court
entered judgment against. While the court apparently intended to enter
judgment only against the Fund, and the district court docket reflects
this disposition, the individual defendants nevertheless have appealed.
Inasmuch as we conclude that Foley was not entitled to a judgment
against any of the defendants, the question is of no practical
significance. However, as a matter of convenience, we will treat all the
individual defendants except Fred Compton as appellants, as they in fact
appealed.

to which he otherwise was entitled. Following a bench trial, the district court concluded that the Trustees arbitrarily and capriciously declined to apply the exception to Foley in the manner they had applied it to other employees seeking its benefit. Thus, it entered judgment in his favor on August 29, 2000. Appellants assert that the district court, when reviewing the Trustees' decision, erred in its application of the arbitrary and capricious standard, as Foley was not similarly situated to other employees to whom the Trustees had applied the exception. Appellants also appeal the district court's subsequent award of attorneys' fees to Foley by order of December 8, 2000. For the reasons set forth below, we will reverse the district court's judgment on the merits and, accordingly, we also will reverse the award of attorneys' fees.

I. BACKGROUND

Foley is the former President of the International Brotherhood of Electrical Workers Local 98 (hereinafter "the Union") and a former Trustee of the Union's Pension Fund. He worked in covered employment for Fund pension purposes, i.e., employment in the electrical industry, from 1959 until his employer laid him off in 1971. Then, from 1972 through 1980, Foley worked in his family's tire business, returning to employment in the electrical industry in 1981. Following his return to the electrical industry, Foley was elected the Union's President and he served as a Trustee of the Pension Fund from 1987 through July 1996. In July 1996, Foley retired and sought pension benefits.

Under the Plan provisions, Foley forfeited all credited service earned prior to his return to work in 1981 because of a break-in-service provision which provided, in the years applicable to Foley, that accrued pension credits lapsed when a Plan participant did not work 600 hours in covered employment for a consecutive two-year period. There is, however, an exception to the break-in-service provision, known as the available-for-work exception, wherein the Plan provides that an employee shall not forfeit credited service if he was continuously available for work within the jurisdiction of the Union and unable to obtain covered

4

employment.2 Based on this exception, in 1988, shortly after Foley began his tenure as Trustee, the Trustees agreed to excuse his break-in-service pursuant to their understanding that work had not been available to him in covered employment from 1972 to 1980.

On October 28, 1994, however, Fred Compton, a former Union president and Trustee, sent Laurance Baccini, counsel to the Pension Fund, a letter stating that the 1988 decision was incorrect because the Trustees at that time based their decision on fabricated information improperly skewed in Foley's favor. Upon receipt of Compton's letter, the Trustees appointed a subcommittee to investigate Compton's allegations. Then, in February 1995, based on the subcommittee's recommendations, the Trustees reversed the 1988 decision because they concluded that there was insufficient evidence to substantiate Foley's claim that work was unavailable and that he was available for covered employment in the 1972-1974 period.

In July 1996, Foley applied for pension benefits but, based upon their 1995 decision, the Trustees denied his application insofar as it sought credits for the period between 1959-1971. Foley appealed but was not successful as the Trustees determined that he still had not presented sufficient information to establish his entitlement to credit for the disputed years of credited service.

On February 23, 1998, Foley commenced this action under the Employee Retirement Income Security Act, 29 U.S.C. S 1001, et seq. ("ERISA"), in particular 29 U.S.C. SS 1132(a)(1)(B) and (a)(3), which action, as subsequently amended, named the Fund, the Union, the Trustees, and various Union officers as defendants. In his complaint Foley

_____

2. The relevant Plan provision states:

> Notwithstanding anything to the contrary in paragraph (a) and (b), an employee shall not have forfeited any of his Credited Service (past or future) or the right to any death benefit regardless of his

> number of years of credited service if:

> (1) he was continuously available for work within the jurisdiction of

> the Union and was unable to obtain covered employment.

Article I, Definitions, Section C "Break in Service" (c)(i).

asserted that the Trustees improperly applied a more demanding evidentiary standard to him than to other employees who had been granted an exception to the break-in-service provision notwithstanding a provision in the Plan that all "interpretations and decisions shall be applied in a uniform manner to all Employees similarly situated." In addition to his ERISA claims, Foley also asserted claims under the Labor Management Reporting and Disclosure Act of 1974, 29 U.S.C. S 401 et seq., ("LMRDA"), and the Internal Revenue Code, 26 U.S.C. SS 411 and 412. Following the parties' cross-motions for summary judgment, the district court dismissed all but Foley's ERISA claims. See Foley v. IBEW Local Union 98 Pension Fund, 91 F. Supp. 2d 797 (E.D. Pa. 2000).3 We make no further reference to the dismissed claims, as Foley has not cross-appealed from their dismissal and has not asserted that we should affirm on the basis of these claims.

After a bench trial in August 2000, the district court found that the Trustees arbitrarily and capriciously acted contrary to the terms of the Plan when they denied Foley credit for time during his employment in the electrical industry prior to his 1971 layoff. See Foley v. IBEW Local Union 98 Pension Fund, 112 F. Supp. 2d 411, 416-17 (E.D. Pa. 2000) ("Foley"). On August 29, 2000, the court entered judgment against appellants, and on December 8, 2000, entered an order granting Foley's motion for attorneys' fees. See Foley v. IBEW Local Union 98 Pension Fund, No. Civ. A. 98-906, 2000 WL 1801273 (E.D. Pa. Dec. 7, 2000). Appellants have timely appealed from the judgment and order.4

II. STANDARD OF REVIEW

We reverse factual conclusions of the district court only if they are clearly erroneous, see Fed. R. Civ. P. 52(a), but exercise "plenary review over the trial court's choice and

_____

3. Foley included Compton as a defendant but the parties later dismissed the action against him by stipulation. He is not a party on this appeal.

4. The district court had jurisdiction over this matter pursuant to 29 U.S.C. S 1132(e) and 28 U.S.C. S 1331 and we have jurisdiction under 28 U.S.C. S 1291.

interpretation of legal precepts and its application of those precepts to the historical facts." Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., 222 F.3d 123, 129 (3d Cir. 2000) (citation and internal quotation marks omitted). Where, as here, the plan administrator has discretion to interpret the Plan and the authority to determine eligibility, we review a denial of benefits under an "arbitrary and capricious" standard. Id.  Under this standard:

> a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.

Orvosh, 222 F.3d at 129 (internal quotations and citations omitted).5 Further, "the district court cannot, by couching a legal conclusion as a finding of fact, prevent appellate review of legal errors." Louis W. Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 766 (3d Cir. 1994) (citation and internal quotation marks omitted).

III. DISCUSSION

The Trustees denied Foley credit for the disputed years of service because the subcommittee's investigation demonstrated that work had been plentiful between 1972 and 1974, but that Foley was unavailable for work during that period due to his employment in the family tire business. The Trustees also found that Foley failed to produce any evidence supporting his claim.

Under the "arbitrary and capricious" standard of review, the district court was bound to affirm this decision if it was not contrary to the Plan's terms and was rationally related to a legitimate Plan purpose. See Orvosh, 222 F.3d at 129-31. The district court determined that although the Trustees believed in good faith that they were treating Foley

_____

5. Foley unsuccessfully argued in the district court that the court should review the Trustees' decision on a de novo basis but he does not make that contention on this appeal.

the same as any other applicant seeking the benefit of the break-in-service exception, they actually treated him differently from other employees similarly situated in that they arbitrarily and capriciously subjected his application to a more demanding evidentiary standard and a stricter level of scrutiny than those of other employees. See Foley, 112 F. Supp. 2d at 416. A district court, however, may not substitute its judgment for that of a plan's trustees in determining a claimant's eligibility for benefits, and, as we discuss below, the record demonstrates that the Trustees here did not arbitrarily and capriciously treat Foley as not being similarly situated to other employees to whom the exception to the break-in-service rule had been applied.

The record shows that during a Trustees' meeting in 1979, they determined that Foley forfeited the credits he earned from 1959-1971 as he had a two-year break in service as of 1973. In 1984, when, after resuming employment in the electrical industry, Foley inquired as to the status of those credits, Compton informed him that they had been forfeited and that it was "too late" to save them.

In 1988, six months after Foley was elected President of the Union, he appointed himself, Paul Gilmore, and James Mackin to three of the six positions on the Fund's Board of Trustees. Shortly thereafter, the Board of Trustees granted Foley credits for the years 1959-1971, reversing its prior forfeiture of his credits even though he had not applied formally for their reinstatement. Indeed, Foley did not present documentary evidence to support the award of credits at the time he was awarded the credits. Instead, Mackin and Gilmore spoke on Foley's behalf, and the Trustees appear to have accepted their statements as true. The record shows, however, that Mackin and Gilmore did not have first hand knowledge of the germane facts as they had not been employed full time in the electrical industry during the 1972 to 1974 period.

In October 1994, however, the Trustees received Compton's letter, "seriously question[ing]" the 1988 decision and stating that "the [1988] pension trustees may have been either misled or misinformed" when they reinstated Foley's credits. Confronted with this formal

8

written challenge, the Trustees determined that they were obliged to review the facts and, accordingly, created the subcommittee to investigate the issues Compton raised in his letter.

The subcommittee rendered its report in late 1994 or early 1995. It found that work opportunities were"plentiful" from 1971 through 1974 and, according to the record available to it, the hours electricians worked during that period evidenced "full employment, a few visiting brothers working and a decent amount of overtime." The subcommittee also determined that the Trustees in 1988 primarily relied on Gilmore's statement that Foley was available for work but Gilmore admitted to the subcommittee that he knew only of Foley's availability after 1975. The subcommittee interviewed Foley, who stated that he went into the family business in 1972 and periodically checked to see if electrical work was available.

We recognize that the subcommittee noted that the lack of evidence supporting Foley's alleged availability for work in the electrical industry and inability to find work was not "unique" and that the "available for work–no work available" exception had been applied liberally. In fact, the subcommittee's report included a list showing each case in which the exception had been applied since 1980. Consequently, the subcommittee recommended that the Trustees construe the exception more strictly than they had in the past and that if they did so in Foley's case, they also should "examine" the included list, making"appropriate adjustments." Id. at 254 255.6

_____

6. According to the list, in addition to Foley, 20 other employees applied for the benefit of the exception, only one unsuccessfully. Eight who were successful had signed the Union's "out-of-work" book signaling their availability for work. In three cases, the Trustees testified as to having first hand knowledge as to each employee's availability for work and in three other cases the employees had constant contact with the Union, and one submitted a letter detailing his work history.

The district court found these distinctions from Foley's case "not meaningful or persuasive." Foley, 112 F. Supp. 2d at 414 n.2. It pointed out that during the period at issue, 1972–1974, a time that the Trustees found that work opportunities were plentiful, nine employees had been granted the "available for work–work not available" exception. Id.

9

In February 1995, following their review of the subcommittee's report, the Trustees unanimously voted to remove the credited service from Foley's pension record but advised him that at any time he could submit a request for reconsideration attaching relevant documentation. The Trustees also resolved to reinvestigate all other individuals to whom the "available for work-no work available" exception had been applied. See Foley, 112 F. Supp. 2d at 413.

In July 1996, when Foley applied for benefits, he did not submit additional information supporting a credit for service from 1959 to 1971. Accordingly, the Trustees awarded Foley pension benefits taking into account his break in service. Foley appealed the decision, but the Trustees concluded that they had "insufficient evidence as to the unavailability of work and Mr. Foley's inability to obtain covered employment during the Plan years 1972, 1973 and 1974."

The district court found that the Trustees acted in good faith and believed they did not treat Foley differently than other employees. Foley, 112 F. Supp. 2d at 415. However, the court determined that the Trustees actually held Foley to a stricter standard "than any other individual in like circumstances," id., arbitrarily and capriciously violating their duty to interpret the Plan and apply decisions "in a uniform manner to all Employees similarly situated." Id. at 416 (citation omitted).

The district court made much of the fact that the Trustees appointed the subcommittee to investigate the circumstances under which Foley had been granted the exception in 1988, yet failed to form a subcommittee to examine "any other plan participant's pension application." Foley, 112 F. Supp. 2d at 415. As the district court

_____

However, of these nine, only two met the exception during 1973, and the remaining seven could not find work from 1974-1975. Most of those who could not find work in 1974-1975 were out-of-town workers who signed the out-of-work book. Of the two that met the exception in 1973, the Trustees had first hand knowledge of both employees' record.

10

recognized, however, the allegations of impropriety that Compton raised in his letter "justified a review of plaintiff's claim to determine whether there was any impropriety." Id. at 414 n.2. Thus, given the allegations of impropriety in the Compton letter, and in light of their fiduciary duties to the Fund, the Trustees reasonably and appropriately appointed the subcommittee in Foley's case.

The district court next took issue with the actions the Trustees took upon receipt of the subcommittee's report. See id. The court seems to have been of the view that because the investigation yielded "no evidence of wrongdoing or deceit," the Trustees were bound to grant Foley's application for benefits as they had with"a number of individuals who sought refuge under the break-in-service exception . . . who, like Foley, produced a minuscule amount of evidence." Id. The court also seemed frustrated with the fact that the Trustees had not conducted an investigation with respect to the other employees who were granted the benefit of the exception. Id. at 415. These cases differed from Foley's, however, in that these employees' eligibility for the exception never was challenged. Further, the subcommittee did not uncover any evidence suggesting that any of them acquired pension credits through improper means.7

In essence, the court held that because Foley was "similarly situated" to other employees who had benefitted from a liberal interpretation of the available-for-work exception, the Trustees' failure to award him the break-in service credits was "arbitrary and capricious." Foley, 112 F. Supp. 2d at 416. The premise of the court's decision was, however, erroneous as Foley was not similarly situated to rank and file Union members who had been granted the benefit of the exception. Rather, he was a Trustee when he sought to have service credits added to his pension record, and he appointed the Trustees who spoke on his behalf and apparently voted to grant him the benefit of the exception. Moreover, Foley's case was the only one under the

_____

7. Apparently, the Trustees referred the matter to the Fund professionals for follow-up. Several individuals who were granted the benefit of the exception now are deceased. See Appellants' Br. at 34.

11

available-for-work exception where issues of impropriety were raised, and his case was the only one in which the employee's entitlement to benefits under the exception was challenged. Furthermore, upon review of the subcommittee's report, the Trustees recognized that they did not have evidence to support the application of the exception to Foley.

It is also significant that at a time that he should have been "continuously available for work" in order for his break in service to be excused, Foley was engaged in the family tire business and thus had an incentive not to work in the electrical industry. When the district court made its determination that the Trustees acted arbitrarily and capriciously, it should have recognized that this circumstance distinguished Foley's case from those of other supposedly "similarly situated" employees who were granted the benefit of the exception, as Foley made no showing that they had incentives equivalent to his to eschew employment in the electrical industry. In the circumstances, it cannot reasonably be held that the Trustees arbitrarily and capriciously treated Foley differently from other employees similarly situated, and thus the district court erred in reaching its result.

We emphasize that in focusing on the fact that credit under the available-for-work exception had been granted liberally in the past rather than examining whether the Trustees' decision was contrary to Plan language or whether it was rationally related to a legitimate Plan purpose, the district court did not properly credit significant evidence. This evidence included the subcommittee's finding that work was plentiful from 1972-1974, the Trustees' own recollections and understanding regarding the availability of work during that time, Gilmore's admission to the subcommittee of his lack of knowledge of the germane facts, Foley's failure to present evidence, and the circumstances in which Foley was originally granted the exception. The court, however, should have relied on this evidence as it was not free to substitute its judgment for that of the Plan administrators. See Orvosh, 222 F.3d at 129.

12

Moreover, the district court's holding binds the Trustees to a result that was a consequence of poor administrative practices, that the Trustees later corrected. In effect, the district court's decision improperly "straitjackets" the Trustees into granting benefits simply because of their past practices. See Oster v. Barco of Cal. Employees' Ret. Plan, 869 F.2d 1215, 1219 (9th Cir. 1988) (holding that prior record of granting requests is insufficient to establish that committee denied request in arbitrary and capricious manner and stating "[t]o hold otherwise would impair the flexibility necessary for proper financial management of such plans, a goal of Congress in holding ERISA fiduciaries to the `prudent man' standard") (citation and internal quotation marks omitted). See also Nazay v. Miller, 949 F.2d 1323, 1336 (3d Cir. 1991) (plan administrator's decision not to waive requirement "was neither arbitrary nor capricious and did not constitute an abuse of discretion" where plan administrator waived requirement on 14 previous occasions). We are particularly troubled by the fact that the district court effectively read the break-in-service forfeiture provision out of the Plan, as under the court's conclusions it is difficult to see how it ever could be applied in the face of an employee's claim that he is entitled to the benefit of the exception.8

The district court's opinion also is problematical for another quite fundamental reason. While we know that the break-in-service exception was excused in 20 other cases in which employees claimed its benefit, the district court had no way of knowing the number of situations in which employees lost credits by reason of a break in employment during a consecutive two-year period but did not seek the benefit of the exception. Certainly if there were such employees, they were treated the same as rather than differently from Foley.9 But the district court did not consider this possibility.

_____

8. Foley argues that the Trustees did not raise a"straightjackets" argument in the district court. We are satisfied, however, that they sufficiently made the contention to preserve it for this appeal.

9. The subcommittee's report said that "[g]enerally, the available for work-no work available exception has been applied liberally in almost all

13

In summary, we conclude that in appointing a subcommittee to investigate the claims against Foley, the Trustees acted quite responsibly and consistently with their obligations as fiduciaries. Moreover, inasmuch as the Trustees' decision to deny the disputed benefits was not contrary to the Plan's terms and was rationally related to a legitimate Plan purpose, the district court erred in determining that the Trustees acted in an arbitrary and capricious manner. Furthermore, because Foley was not similarly situated to the other employees who were granted the benefit of the exception, the Trustees were not bound to grant him the benefit of the exception merely because they had applied it in other cases. Accordingly, we will reverse the judgment of the district court.10

---

cases in which it has been invoked." The report, however, did not advise the Trustees of the number of cases in which the break-in-service forfeiture provision had been applied without the employee invoking the exception. Moreover, the parties' briefs do not suggest that there was any evidence on this point in the district court. In this regard, we point out that Foley had the burden of proof as he brought the action and had to demonstrate that the Trustees acted arbitrarily and capriciously. While we cannot be certain of the number of employees who did not receive the benefit of the break-in-service exception following an interruption of employment and forfeiture of credits, it may have been substantial. The list attached to the subcommittee's report reveals that over a period of about 15 years from 1980 until the subcommittee made its report, only 21 employees sought the benefit of the exception. Yet, according to the district court, the Fund had more than $130,000,000 "in its coffers" when Foley applied for fees. See Foley v. IBEW Local Union 98 Pension Fund, 2000 WL 1801273, at *4. A reasonable inference can be drawn from the size of the Fund that it must have provided for benefits for many employees and thus it well may be that many have lost pension credits by reason of breaks in service. Yet inasmuch as we only can speculate on this fundamental point, we do not understand how we can uphold the decision of the district court that the Trustees acted arbitrarily and capriciously. We add, however, that even without considering the possibility that some employees did not obtain the benefit of the break-in-service exception, our result would be the same as that we reach.

10. The appellants contend that the district court erred in entering judgment against Scott Ernsberger, whom they describe as the Fund's "third party contract administrator," by reason of circumstances

14

particular to him, and that the court also erred in calculating damages. In view of our result, we do not reach these issues as we are reversing the judgment as to all appellants, including Ernsberger on common grounds and directing judgment to be entered in their favor, and because there will not be any damages to calculate.

11. Certain of the defendants unsuccessfully sought attorneys' fees in the district court but inasmuch as they are not at this time seeking these fees we do not review the district court's order denying their application.

IV. ATTORNEYS' FEES

Finally, we come to the question of the attorneys' fees which ERISA permits when a participant, beneficiary or fiduciary succeeds on any significant issue in the litigation which achieves some of the benefit sought from the suit. See 29 U.S.C. S 1132(g)(1). In light of our conclusions, it is clear that Foley has not prevailed on a significant issue in the litigation and thus, we will therefore reverse the district court's award of attorney fees. See Hensley v. Northwest Permanente P.C. Ret. Plan & Trust, 258 F.3d 986, 1002–03 (9th Cir. 2001).11

V. CONCLUSION

For the foregoing reasons, we will reverse the district court's judgment of August 29, 2000, and its order of December 8, 2000, and will remand the matter to the district court to enter judgment for the defendants.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15